# EXHIBIT B

# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

**VICTIM RIGHTS LAW CENTER**
115 Broad Street, 3rd Floor
Boston, MA 02110,

**EQUAL RIGHTS ADVOCATES**
1170 Market Street, Suite 700
San Francisco, CA 94102,

**LEGAL VOICE**
907 Pine Street, Suite 500
Seattle, WA 98101

**CHICAGO ALLIANCE AGAINST SEXUAL EXPLOITATION**
307 N. Michigan Ave., Suite 1818
Chicago, IL 60601

**JANE DOE**, an individual by and through her mother and next friend, **MELISSA WHITE**

**NANCY DOE,** an individual

**MARY DOE,** an individual

     Plaintiffs,
vs.

**ELISABETH D. DEVOS**, in her official capacity as Secretary of Education, 400 Maryland Avenue SW Washington, DE 20202;

**KENNETH L. MARCUS**, in his official capacity as Assistant Secretary for Civil Rights, 400 Maryland Avenue SW Washington, DC 20202,

**U.S. DEPARTMENT OF EDUCATION**, 400 Maryland Avenue SW Washington, DC 20202,

     Defendants.

Case No.: 1:20-cv-11104

**DECLARATION OF NANCY DOE**

1

I, NANCY DOE, declare that I am over the age of 18 and competent to testify to the following facts:

**Sexually Assaulted and Exploited by Other Students**

1. I am a former undergraduate student at the University of New Haven ("UNH" or "the University"). I attended UNH from approximately September 2015 to May 2019.

2. I experienced two discrete acts of sexual assault, harassment, and/or exploitation.

3. The first occurred during the fall semester of 2015, when another student sexually assaulted me in my freshman year dormitory.

4. The sexual assault happened on campus in my dormitory room. No one else was present at the time.

5. A friend told me later that semester that she was sexually assaulted by the same person, as were other women. Those assaults also involved non-consensual and coerced sexual touching.

**Reporting the 2015 Misconduct to UNH**

6. I initially did not report the sexual assault to the University or the police because I did not feel able to talk about what I experienced. At the time, I thought minimizing my experience would help me move on.

7. I decided to report my sexual assault to the UNH Title IX office after learning that my friend who was assaulted by the same student reported her incident but was not hopeful the complaint would be resolved to her satisfaction. I hoped my report about the same student would compel the school to hold him accountable and protect other women from experiencing the same thing.

8. I reported to the UNH Title IX Coordinator and Dean of Students at a brief in-person meeting in approximately March 2016. They did not conduct a full investigation, but they offered me supportive measures including changing dorm rooms and my class schedule. I did not accept any of the offered supportive measures because my purpose in filing my first complaint was to prevent harm to others.

**Sexual Exploitation and Harassment by Other Students**

9. In approximately March 2018, two students filmed me without my consent during a sexual encounter at an off-campus apartment. Both students were on the UNH men's soccer team, and they distributed the video to the entire team via social media. I did not know about the video or its distribution at the time it was made.

10. I learned of the recording about a month later from another member of the men's soccer team. He told me that the video had been viewed by members of both the men's and women's soccer teams and that some of the men had it saved to their phones. I do not know exactly how many students saw or saved the video.

11. I confirmed that the video had been made and distributed through communications with other members of the men's and women's soccer teams.

12. After other students found out that I knew about the video, members of the men's and women's soccer teams started harassing me about it. The harassment was frequent and occurred both digitally and in person.

**Reporting the 2018 Misconduct to UNH**

13. I felt scared, trapped, and uncertain about how to respond to the non-consensual recording and distribution, and the resulting harassment. It was deeply violating to learn not only that I had been recorded without my knowledge, but also that an indeterminate number of students had seen and/or saved the video.

14. I did not want to go to the police, but I needed help to stop the spread of the video, protect myself from further harm, and prevent other students from experiencing similar sexual exploitation. I thought UNH was in the best position to help, but I did not know if the Title IX office would conduct a meaningful investigation given my prior experience.

15. Accordingly, I initially tried to seek support through the UNH Dean of Students. He told me that I had to file a report with the Title IX office for the University to take further action.

16. In approximately early April 2018, I emailed the Title IX Coordinator at UNH to report the sexual exploitation and set up an initial meeting. At that meeting I explained that two

men from the soccer team had taken a video of me without my consent during a sexual encounter and shared it with other students.

17. The UNH Title IX Coordinator discouraged me from pursuing a formal investigation into the incident, instead suggesting the informal resolution process. She offered to call the two students into her office or ask their soccer coach to talk to them. She also offered to change my dorm room or class schedule if either overlapped with either of the two students, but I declined because neither of these measures were applicable to my situation and they did not provide the type of support I needed.

18. Despite her recommendation, I still wanted to consider proceeding with the formal resolution process to stand up for myself, but I was afraid of experiencing further harassment from members of the soccer team.

19. At the suggestion of a UNH mental health counselor, I met with an advocate at a local rape crisis center who had experience supporting students through the Title IX process. She helped me understand what the formal investigation process would look like and offered to participate in a follow up conversation with the Title IX office.

20. My advocate and I met with the Title IX Coordinator in person on approximately April 11, 2018.

21. The Title IX Coordinator offered to open a formal investigation into the sexual exploitation and encouraged me to move quickly in setting up an interview with an investigator because the end of the academic year was approaching.

22. Given my fear of retaliation, I struggled with the decision of how to proceed. I continued to explore the option of filing a complaint with the police but decided against it when I learned it could not be done anonymously.

23. On approximately April 23, 2018, my advocate emailed the Title IX Coordinator to tell her I was still deciding if I wanted to move forward with the formal investigation. The Title IX Coordinator suspended my investigation until I instructed them to proceed.

**The Effect of This Experience on my Health and Access to Education at UNH**

24. I hoped that not proceeding with the formal investigation would give me more space to heal and focus on my schoolwork. However, the stress of what I had already gone through created ongoing challenges for my mental health and ability to learn.

25. I increasingly experienced paranoia and agoraphobia in spring 2018, to the point where I struggled to leave my dorm room. I was terrified of being subject to further harassment by members of the men's and women's soccer teams, which made me afraid to run into any student associated with the teams. I was scared to see the men who had non-consensually filmed me because just seeing them was triggering and overwhelming. The trauma of the 2015 misconduct also resurfaced at this time, and I was afraid of seeing the student who had sexually assaulted me on campus as well.

26. This extreme fear of leaving my room meant that I stopped attending my spring 2018 classes in person. This ultimately meant I had to withdraw from two classes with attendance requirements that semester.

27. I was also experiencing frequent disassociation and difficulty focusing because of the constant fear. I was only able to pass the semester because most of my professors worked with me to provide accommodations.

28. I had to attend summer classes to make up for the classes I withdrew from in 2018, which required taking out additional student loans.

29. I previously identified as a strong student and hard worker, but the impact these events had on my academic performance made me question my future success.

30. Because of my experience at UNH, I will not return to the University for a Masters degree.

31. In approximately April 2016 I started to see a therapist on a weekly basis because of my experience.

32. I was formally diagnosed with Post-Traumatic Stress Disorder ("PTSD") in August 2019. I understand this to be a result of both the sexual harm and harassment I experienced, which was compounded by these students never being held accountable for their actions.

33. While I had access to free mental health care at UNH, since graduating I've had to find and pay for a counselor. This costs $20 per session, and I attend sessions weekly.

34. I started seeing a psychiatrist for medication to manage my PTSD. I see my psychiatrist monthly and my co-pay is $20. My psychiatric medication has a co-pay of $5-10.

**Reopening my Title IX Complaint with UNH**

35. Even after graduating from UNH, I carried a lot of pain and anger over the unresolved status of my Title IX complaints.

36. In approximately June 2020, I posted on social media about the assault, exploitation, and harassment I experienced and the lack of a meaningful resolution. My post received a tremendous amount of attention that I had not anticipated, including accounts from others in similar situations.

37. The response to my post reminded me of my original desire when I reported in 2016, which was to encourage UNH to take reports of sexual violence among students more seriously. Motivated to recommit to this goal, I created a petition urging the school to look at how the Title IX office handles complaints and investigations. Approximately 1,320 former and current UNH students have signed onto the petition since it opened in June 2020.

38. This energy also encouraged me to pursue accountability for the harm I had experienced instead of feeling like I had to minimize it. In June 2020, I emailed the President of UNH and the deans in the Student Affairs office to describe the issues with how my Title IX complaints were handled in both 2016 and 2018. I also requested to reopen and proceed with the 2018 investigation into the non-consensual recording. Even though I graduated and no longer needed support from the school, I wanted the men who had violated me to finally be held responsible for their actions in some way.

39. The Dean of Students responded to my email, and I elected to proceed with a formal investigation against one of the two students who filmed me without my consent. The other student no longer attends UNH.

**The Effect of the Final Rule on my Health and Ability to Pursue my Title IX Complaint**

40. I am very scared that the Final Rule will subject me to psychological harm similar to what I experienced when I originally tried reporting my experiences of sexual misconduct to UNH. I am afraid that the new requirements for Title IX investigations, if I can proceed with my complaint all, will cause me to slip back into feeling paranoia, helplessness, disassociation, and other severe PTSD symptoms.

41. No one at UNH has spoken with me about how the Final Rule might affect my complaint.

42. It's my understanding that my complaint would not be investigated under the Final Rule because the non-consensual recording happened off campus.

43. It is also my understanding that my complaint might not be investigated under the Final Rule because I graduated from UNH, regardless of the fact that the Respondent is still enrolled.

44. Because of this, if I found out my complaint would be subject to the Final Rule, I would ask to stop the formal investigation right away. I would not want to hear that UNH would not be proceeding with my complaint. It would be too damaging to feel like my options for accountability and healing were once again being taken away.

45. When I read the Final Rule, I felt like complainants were given fewer rights and protections than respondents. I questioned why I would move forward with my investigation just to have my civil rights stripped away. Just reading the Final Rule makes me feel completely invalidated and like I should have never spoken up about what I experienced. It feels like being told, "even the government does not care about you."

46. If UNH did not investigate my complaint given the Final Rule, it would eliminate all of the healing I have done since 2018. I would feel thrown back into the place and time that this harm happened to me instead of feeling like I could get closure and move forward with my life. I do not think I would ever be able to get over it. I would rather avoid the investigation entirely than risk getting dragged back in like that.

47. If my Title IX complaint is not subject to the Final Rule because the incident happened off campus or because I have graduated, and my school uses another policy to

investigate it, I think the respondent would sue to have the complaint proceed under the Final Rule in order to force my school to dismiss my entire complaint. It would feel like I was being punished for this happening to me.

48. It is my understanding that if my complaint does proceed under the Final Rule, I would be subject to live, direct cross-examination by an advisor of the respondent's choice.

49. I am concerned that live, direct cross-examination would cause similar self-doubt and damage as my complaint being thrown out, especially if it was conducted by an aggressive attorney.

50. I already constantly question my own experiences and whether they are valid. Now, given the Final Rule, I feel like I have to think five steps ahead before I say something about what happened to me in case it is misconstrued or could be used against me. Every time I think about being cross-examined I start cross-examining myself in my head.

51. I have spent enough time learning about PTSD to understand that this self-doubt is normal and does not mean my experiences were okay or not a violation. However, that knowledge does not make it any easier to trust myself.

52. Even with this self-doubt, I will continue with my Title IX investigation if the court issues a preliminary injunction or vacates the Final Rule because I think the Title IX process as it exists now could really help with my healing process.

53. I think a large number of people would feel the negative impacts of the Final Rule. Gender-based discrimination and sexual violence affects countless students, especially marginalized students. Title IX is not just about dealing with rape; it is about understanding and confronting gendered racism, combatting discrimination on the basis of sexuality, and so much more. The Final Rule should worry every student and everyone who cares about them.

54. I strongly feel that the Final Rule will make it even harder for students to get the help they need in the wake of an experience that completely changes you. The harm I experienced was not a small thing; it completely changed my life. There is a person before this happened and after, and I will never be the person I once was. Anyone experiencing that magnitude of harm absolutely needs to be recognized and protected and supported. I needed to

be recognized and protected and supported. Current and former students, myself included, deserve better than what the Final Rule gives us.

55. To date, I have not heard from UNH about any further updates to my Title IX case.

I declare under penalty of perjury that the foregoing is true and correct. Executed on October 10, 2020, in California.

_____
Nancy Doe