# EXHIBIT E

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

**VICTIM RIGHTS LAW CENTER**
115 Broad Street, 3rd Floor
Boston, MA 02110,

**EQUAL RIGHTS ADVOCATES**
1170 Market Street, Suite 700
San Francisco, CA 94102,

**LEGAL VOICE**
907 Pine Street, Suite 500
Seattle, WA 98101

**CHICAGO ALLIANCE AGAINST SEXUAL EXPLOITATION**
307 N. Michigan Ave., Suite 1818
Chicago, IL 60601

**JANE DOE**, an individual by and through her mother and next friend, **MELISSA WHITE**

**NANCY DOE,** an individual

**MARY DOE,** an individual

      Plaintiffs,
 v.

**ELISABETH D. DEVOS**, in her official capacity as Secretary of Education,
400 Maryland Avenue SW
Washington, DC 20202,

**KIMBERLY RICHEY**, in her official capacity as Acting Assistant Secretary for Civil Rights,
400 Maryland Avenue SW
Washington, DC 20202,

**U.S. DEPARTMENT OF EDUCATION**,
400 Maryland Avenue SW
Washington, DC 20202,

      Defendants.

Case Number: 1:20-cv-11104
Declaration of Stacy Malone

## AMENDED DECLARATION OF STACY MALONE (VICTIM RIGHTS LAW CENTER)

I, Stacy Malone, Executive Director, declare as follows:

1. I submit this amended declaration in support of the proposed second amended complaint filed by Equal Rights Advocates ("ERA"), Victim Rights Law Center ("VRLC"), Legal Voice, Chicago Alliance Against Sexual Exploitation ("CAASE"), Jane Doe, Nancy Doe, and Mary Doe, plaintiffs in the above-captioned case, which challenges as unlawful the recently issued Rule entitled *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Funding Assistance*. 85 Fed. Reg. 30,026 (May 19, 2020) (the "Title IX Rule" or "Final Rule").

2. I have compiled the information in the statements set forth below through personal knowledge. I have also familiarized myself with the Final Rule in order to understand its immediate impact on VRLC. If I am called as a witness in these proceedings, I could and would testify competently to these facts.

3. I have been employed by VRLC since October 2010. I currently serve as the Executive Director of the organization. In that position, I manage the strategic direction, operations, and development for VRLC's national programs, as well as VRLC's five offices located in Massachusetts and Oregon. I also oversee the organization's management team, finances, fundraising and development, media relations, human resources, and project development. Consequently, I am familiar with and have participated in the organization's Title IX work as an attorney, mentor and supervisor. There are seven

attorneys at VRLC who manage the majority of our Title IX related cases in K-12 and higher education settings in both Massachusetts and Oregon whom I oversee.

4. Founded in 2003, VRLC is a non-profit organization with locations in Oregon and Massachusetts dedicated solely to serving the legal needs of victims of rape and sexual violence. VRLC's mission is to provide legal representation to such victims to help rebuild their lives and to promote a national movement committed to seeking justice for every victim.

5. VRLC provides legal services to help restore victims' lives after experiencing sex-based violence, including sexual assault survivors who have experienced domestic violence, dating violence, and stalking. VRLC's services ensure that survivors can stay in school; protect their physical safety and academic needs; protect their privileged and confidential mental health, medical and education records; preserve their employment and/or scholarships; maintain their safe housing; secure their immigration status; and swiftly access victim compensation and other benefits.

6. As part of its work, VRLC provides legal services and/or facilitates the provision of legal services to students who have experienced sexual violence. With almost 50% of VRLC's clients under the age of 24, a substantial portion of its practice is providing education-related legal consultation and representation. VRLC attorneys represent victims to communicate effectively with school administrators, acquire supportive measures to secure their education while investigations are pending, prepare for and attend disciplinary hearings, file appeals, and if necessary, file complaints with OCR.

7. VRLC has been harmed by the Title IX Rule.

8. VRLC brings this action on its own behalf because the Final Rule concretely frustrates its mission and purpose of providing legal assistance to student survivors in their schools' Title IX proceedings. For example, as detailed further below, the Final Rule chills many student survivors from reporting sexual assault and other sex-based harassment to their schools, bars many student survivors who file Title IX complaints from having their complaints investigated, makes it less likely for VRLC's clients to achieve fair and accurate outcomes in Title IX investigations, reduces deterrence of sexual harassment, and bars many of VRLC's clients from filing administrative complaints against their schools with the Department of Education.

9. These injuries are not speculative. VRLC is currently experiencing student survivors' unwillingness and hesitancy to continue their Title IX complaints when faced with the possibility of cross-examination. This is consistent with our previous experiences after the Department issued interim guidance weakening its Title IX's sex-based harassment policy in 2017, where VRLC saw immediate and detrimental impacts to its mission and operational activities. VRLC is confident it will experience the same, if not more drastic, consequences from the Department's haphazard changes. For example, as a result of the 2017 Guidance, sexual harassment victims were less willing to report their experiences to school authorities, impairing VRLC's ability to achieve its mission. VRLC saw an immediate chilling effect evidenced by a decline in the number of victims willing to pursue their school's Title IX process. The Final Rule will likewise make it less likely for VRLC clients to engage in their school's process or in an administrative complaint with the Department of Education. Such declines in reporting and participation directly threaten and frustrate VRLC's mission and purpose. In addition, the Final Rule will make it difficult for

VRLC to provide appropriate legal counsel to its clients, leading to further reductions in reporting. For example, due to a lack of clarity in the Final Rule, VRLC attorneys anticipate a struggle to advise student survivors on safety concerns during a live hearing with a current civil protection order, how to proceed with a complaint that includes both Title IX and "non-Title IX" allegations, and whether a student survivor's entire testimony will be stricken if they refuse to answer a single question during cross-examination. Even in cases where an individual is willing to or able to proceed with a Title IX complaint at their school, the Final Rule makes it more difficult for VRLC to accomplish its mission of obtaining justice for survivors of sex-based harassment because it makes beneficial outcomes less likely, and because even where those outcomes remain available, success will take more time and effort.

10. The Final Rule also requires VRLC to divert its resources to combat the harmful effects of the Rule. For example, VRLC has had to spend additional time reviewing and understanding the Final Rule; advising clients who anticipate that their Title IX complaint will be dismissed under the Final Rule; creating and updating public-facing materials on the Final Rule, including training curricula, online guides, and a free multi-part webinar series for institutions of higher education; and providing technical assistance to school districts and universities on how to provide trauma-informed practices and modify their existing policies to comply with the Final Rule. Resources were diverted away from client services while VRLC attorneys were reassigned to other projects. For example, one staff member was pulled from all direct representation for several weeks, two administrative staffers who did not work on education matters were pulled in to coordinate the multi-part webinar trainings held in July 2020, and one staff attorney who serves clients in both

education and non-education issues exclusively focused on understanding the impact of the Final Rule on preK-12 students. VRLC continues to be bombarded with requests to serve as the advisor of choice for local campuses and will likely be unable to fill all of those requests, leaving some student survivors without legal counsel in frustration of VRLC's mission.

11. As a result of the Final Rule, VRLC anticipates it will take double the amount of preparation time for staff attorneys to prepare for a grievance process that includes a lengthy live hearing and cross-examination in addition to an investigation, thus diverting its resources and reducing the overall number of survivors VRLC can represent. Even if the Final Rule is vacated, VRLC will not be able to recover this time or later serve these survivors' time-sensitive complaints, thereby frustrating the organization's mission. VRLC has spent hundreds of hours on various resources to support school administrators, legal aid attorneys, K-12 districts, and clients. Resources include a tool for the trauma-informed implementation of the Final Rule, a Title IX primer for K-12 districts, a series of webinars for legal aid attorneys, and technical assistance calls with attorneys at coalitions and domestic violence and sexual assault organizations nationwide.

12. The following is an itemized list of how each challenged provision of the Final Rule individually frustrates VRLC's mission and diverts its resources.

13. Sections 106.44(a) and § 106.45(b)(3)(i) of the Final Rule frustrate VRLC's mission by requiring that schools must dismiss a complaint and are not required to provide supportive measures if the incident falls outside of the new narrow definition of "sexual harassment", if it occurs outside of an educational "program or activity," or if it occurs outside the United States. With over 130 higher education campuses in Massachusetts, many of VRLC's

student survivors are sexually assaulted at off-campus parties and apartments with students socializing with students from other local area institutions, or going on vacations or Spring Break or on school-sponsored study abroad trips. Under this provision, VRLC's mission of representing students who have been sexually assaulted is frustrated as many incidents of violence committed against our student survivor clients are no longer considered "sexual harassment" covered by the Title IX Rule, leaving the impression for other students that sexual violence committed off-campus or that fails to rise to a certain level of severity is less worthy of protection under Title IX. Additionally, many schools will choose to provide fewer or no supportive measures to those complainants who fall into the "non-Title IX" category, leaving VRLC clients with fewer safety, academic, housing, and other critical options to meet their education needs post-assault. While it is true that some schools may create a "non-Title IX" process to hear complaints that must be dismissed under the Final Rule, VRLC staff attorneys will have no ability to provide clear advice and counsel for what rights – if any – VRLC clients will have in a parallel process as schools will be operating outside of the Title IX rubric for sexual violence that had previously been included under Title IX. Furthermore, even if some schools choose to provide a separate "non-Title IX" process, VRLC's mission is frustrated because student survivors whose complaints must now be dismissed under § 106.44(a) and § 106.45(b)(3)(i) will no longer have the ability to seek a remedy from the U.S. Department of Education's Office for Civil Rights for violations of their Title IX rights.

14. Sections 106.44(a) and 106.45(b)(3)(i) also divert VRLC's resources from other mission-critical work. If a school does not offer a "non-Title IX" process, staff resources must be diverted to appealing schools' wrongful dismissals of student survivors' complaints under

7

the "Title IX" process, as it is the only way for the survivor to obtain either supportive measures or an investigation in a more timely manner than seeking a remedy through private litigation or an administrative complaint. If a school offers a "non-Title IX" process and it dismisses a survivor's complaint under the "Title IX" process so that it can be adjudicated under the "non-Title IX" process, VRLC staff would have to divert their resources to oppose any appeals by respondents of these dismissals if they would prefer the Title IX process, which offers respondents procedural advantages. And for cases where some incidents fall under the "Title IX" process and others must be adjudicated under a "non-Title IX" process, the time-consuming navigation of multiple processes will also require additional VRLC staff resources.

15. Sections 106.30(a) ("formal complaint") and 106.45(b)(3)(ii) of the Final Rule frustrate VRLC's mission of deterring and preventing sexual violence in cases where the complainant or respondent, respectively, is not affiliated with the school where the complaint is filed. In Massachusetts – a state with over 130 higher education institutions – many student survivors are sexually assaulted by persons they meet at parties and sports events at neighboring institutions. Previously, many campuses allowed for third-party complaints against respondents affiliated with their institution as an accountability and deterrence mechanism. Section 106.30(a) frustrates VRLC's mission by requiring dismissals of complaints filed by unaffiliated student survivors and accordingly, chilling their reporting and ensuring no accountability for sexual harassment. Section 106.30(a) also reduces deterrence by creating a loophole for respondents to escape accountability under Title IX. This is because many student survivors who have transferred to another school due to the sexual harassment or violence they experienced at the original institution,

or who have waited until graduation to file a complaint due to the retaliatory risks associated with filing a complaint against an athletics coach or faculty advisor, are no longer be eligible to file a complaint. Similarly, §106.45(b)(3)(ii) frustrates VRLC's mission of deterring sexual harassment and violence because it allows respondents to escape accountability by simply transferring to another institution, where they can continue to sexually harass or assault other student or staff at the new school. Many VRLC clients who attend the same institution as their respondent have waited until their respondent graduated before filing a formal complaint out of a fear that the respondent would retaliate or their own academics would suffer because of the time-intensive nature of an investigation.

16. Sections 106.30(a) ("formal complaint") and 106.45(b)(3)(ii) regarding unaffiliated complainants and respondents will divert VRLC's resources from other critical work. VRLC will likely spend extra time arguing for a student survivor's right to access a Title IX proceeding at all, rather than spending that valuable time advocating for the survivor's rights during their Title IX proceeding. Furthermore because § 106.30(a) requires and § 106.45(b)(3)(ii) allows schools not to conduct an investigation when the complainant or respondent, respectively, is unaffiliated with the school, some schools will mistakenly—yet reasonably—believe that they need not provide supportive measures in such cases as well. VRLC staff will therefore need to divert resources educating school officials that cases involving unaffiliated complainants or respondents are still considered "Title IX" cases, even if an investigation is barred or is not required, and therefore supportive measures are still required under the Final Rule.

17. Sections 106.30(a) ("actual knowledge") and 106.44(a) of the Final Rule frustrate VRLC's mission of deterring and preventing sexual violence because schools are not required to address sexual harassment unless there is "actual knowledge" of it by (i) a Title IX coordinator, (ii) a K-12 employee, or (iii) a postsecondary employee who is an "official with the authority to institute corrective measures." VRLC provides student survivors with representation when filing administrative complaints with the Department of Education's Office for Civil Rights when their schools do not respond adequately to known or suspected sexual harassment. Under the Final Rule, VRLC can no longer help student survivors file an OCR complaint if they do not meet the new notice requirements under the Final Rule. Survivors in postsecondary schools who report to a trusted coach, faculty member, or resident assistant, but do not receive any help from the school, will no longer have their OCR complaints investigated despite their education suffering because of the harassment.

18. Sections 106.30(a) ("actual knowledge") and 106.44(a) will divert VRLC's resources from other mission-critical work by requiring staff to identify alternative state or local laws that require schools to address both known and suspected sexual harassment and that require postsecondary schools to address sexual harassment reported to a larger set of school employees. VRLC staff must then spend additional time filing administrative complaints with state or local agencies instead of with the Department of Education.

19. Section 106.44(a) of the Final Rule frustrates VRLC's mission to deter and prevent sexual violence by requiring schools only to respond in a way that is not "deliberately indifferent" or "clearly unreasonable." In other words, student survivors cannot file administrative complaints with the Department of Education when their schools fail to respond "reasonably" to sexual harassment but must wait until their schools' responses rise to the

level of "clearly unreasonable." This significant shift requires survivors to accept burdensome investigation procedures that cause unnecessary delays, force survivors to give irrelevant and degrading evidence, or result in a loss of some supportive measures that previously would have been offered as they would not have been considered "unreasonably burdensome" under the previous guidance.

20. Section 106.44(a) diverts VRLC's resources by requiring staff to identify alternative state or local laws that require schools to respond "reasonably" to sexual harassment and to file administrative complaints with state or local agencies instead of with the Department of Education.

21. Section 106.45(b)(6)(i) of the Final Rule frustrates VRLC's mission to deter and prevent sexual violence by requiring postsecondary schools to conduct live hearings with direct cross examination by each parties' advisor of choice. If a party or a witness does not submit to cross-examination, then the school is prohibited from considering any of the individual's statements as evidence. And, schools must allow evidence or cross-examination questions that are unduly prejudicial, misleading, or assume facts not in evidence; that pertain to a complainant's "dating or romantic" history with other people who are not the respondent; or pertain to a complainant's sexual history with the respondent if it is offered to prove consent (§ 106.45(b)(6)(i); 85 Fed. Reg. at 30248-49). The inclusion of cross-examination will frustrate VRLC's mission to deter sexual violence by chilling reporting of student survivors who will decide not to come forward for fear of being retraumatized. VRLC has already worked with several student survivors who fear being subjected to hostile cross-examination by their respondent's advisor who may be the respondent's attorney, angry parent or fraternity brother, or an athletics coach or professor that the complainant may

have a class or affiliation with in the future. VRLC's clients fear they will be questioned about their sexual history or irrelevant information about their medical or family history purely to humiliate or intimidate them. VRLC's mission to obtain a fair and accurate investigation is further frustrated because schools will be forced to disregard highly relevant and probative evidence because a party or witness does not submit to cross examination, is not available, or simply does not answer every single cross-examination question. VRLC attorneys anticipate respondents who have sent messages incriminating themselves to friends will refuse to submit to cross-examination or will convince other witnesses with inculpatory information to refuse to appear for cross-examination. VRLC attorneys further anticipate that written records from witnesses such as police officers, sexual assault nurse examiners, or other witnesses who are unavailable for the live hearing will not be considered because of the challenges in getting those individuals to testify in school proceedings. Furthermore, when schools are required to disregard highly relevant and probative evidence because of § 106.45(b)(6)(i), VRLC's mission to enforce Title IX rights on behalf of student survivors is frustrated as students are no longer able to file an administrative complaint with the Department of Education.

22. As a result of §106.45(b)(6)(i), VRLC will be forced to divert resources in anticipation of more time and resources to represent higher education clients because live hearings with cross-examination require more time to complete. VRLC attorneys expect it will take double the amount of time to prepare for an investigation that includes a lengthy live hearing and cross-examination of each party and witness, thus reducing the overall number of survivors VRLC can represent. The time necessary to prepare a client for a Title IX live hearing will likely be more than what is necessary to prepare a client for testimony for a

court proceeding such as a civil protection order (MGL §209A or §258E 10-day hearing). When preparing a student survivor for a 10-day hearing on a civil protection order, a VRLC attorney could anticipate that a judge would honor the rules of civil procedure, which exclude misleading or unduly prejudicial cross-examination questions. Conversely, the Final Rule prohibits schools from excluding such questions, and VRLC attorneys must spend additional time preparing a student survivor how to respond to questions that would normally be excluded. Additionally, VRLC anticipates resources will need to be diverted in cases where the respondent or other witnesses refuse to submit to cross-examination and attorneys will need to spend significant time tracking down alternative evidence, including through other witnesses.

23. Sections 106.45(b)(1)(iv), 106.45(b)(1)(v), and 106.45(b)(1)(vii) of the Final Rule frustrate VRLC's mission to deter and prevent sexual violence and to achieve fair, timely, and accurate outcomes for clients by requiring a presumption of non-responsibility for the respondent, allowing unspecified periods of delay if there is an ongoing criminal investigation, and allowing a choice for schools to apply either the "preponderance of the evidence" or "clear or convincing" standard in sexual harassment investigations. VRLC's mission is also frustrated when survivors fear reporting or withdraw their complaints if they fear the presumption tips the scales in favor of the respondent or that school officials will mistakenly presume complainants must be viewed as providing false statements until proven otherwise. The fear that the "clear and convincing" evidence standard will be impossible to surmount will also chill reporting for survivors, leading to reduced deterrence of sexual harassment as fewer complaints are filed with schools. In addition, VRLC's mission to secure timely Title IX investigations for survivors is frustrated in cases where

survivors file a complaint with both the school and police, and the resulting delay allows the respondent to graduate or retire, and then the school dismisses the complaint altogether under the unaffiliated respondent provision (§ 106.45(b)(3)(ii)). Furthermore, VRLC will be prevented from seeking to enforce students' Title IX rights as they are no longer able to seek an administrative remedy from the Department of Education on behalf of survivors whose schools unreasonably delay their Title IX investigations or use an unfair evidentiary standard tilted in favor of respondents.

24. As a result of §§ 106.45(b)(1)(iv), 106.45(b)(1)(v), and 106.45(b)(1)(vii), VRLC will be forced to divert resources from other activities. VRLC will spend more time educating Title IX officials that the presumption requirement, while arbitrary and capricious, does not allow officials to presume that complainants are making false statements. Time and resources will be diverted to secure additional evidence to meet a school's higher standard of evidence and providing representation for longer investigations caused by delay. These efforts will divert VRLC's resources from other mission-critical work and representation of fewer clients.

25. Sections 106.30(a) ("supportive measures") and 106.44(a) of the Final Rule frustrate VRLC's mission to provide student survivors with equal educational access, by only requiring schools to provide supportive measures to students who report "Title IX sexual harassment," and by requiring that supportive measures for complainants be non-disciplinary, non-punitive, and not reasonably burdensome to the respondent. However, schools are not required to provide supportive measures to students who report "non-Title IX sexual harassment." VRLC anticipates that schools will mistakenly require that a complainant must bear the entire burden of class changes and housing transfers, with no

changes required of the respondent. VRLC's mission is frustrated to provide equal educational access when schools mistakenly believe that a mutual no-contact order must be issued in all gender-based violence cases. Especially for those student survivors who are experiencing domestic violence, mutual no-contact orders can allow abusers to manipulate their victims into violating the order, resulting in disciplinary action against the victim. Furthermore, VRLC's mission to help student survivors enforce their Title IX rights is frustrated because we will no longer be able to file administrative complaints with the Department of Education when (1) a student survivor who reports a "Title IX" incident receives ineffective or harmful supportive measures because the school deemed anything more to be too punitive or burdensome on the respondent; or (2) a student survivor who reports a "non-Title IX" incident does not receive any supportive measures at all.

26. Sections 106.30(a) ("supportive measures") and 106.44(a) of the Final Rule force VRLC to divert resources by spending extra time requesting supportive measures for student survivors involving unaffiliated complainants or unaffiliated respondents and helping schools understand that supportive measures are still required in such cases. Similarly, VRLC must spend more time explaining to schools that the Final Rule does not always prohibit changing a respondent's schedule or issuing a one-way no-contact order. Because the fine print on these points is buried in the Final Rule's 554-page preamble and is not in the text of the Final Rule itself, many schools will have no idea that they can still provide these helpful supportive measures to complainants.

27. Sections 106.71(b)(1)-(2) and 106.45(b)(5)(iii) of the Final Rule frustrate VRLC's mission to protect student survivors from retaliation. Although § 106.71(b)(1) prohibits retaliation,

it provides that the "exercise of rights protected under the First Amendment does not constitute retaliation." The probation of retaliation is further watered down by § 106.45(b)(5)(iii), which prohibits schools from restricting the ability of either party to discuss the allegations under investigation and §106.71(b)(2), which allows schools to discipline Title IX complainants for making a "materially false statements in bad faith" without it being considered prohibited retaliation, as long as the school's decision to discipline a complainant is not based solely on the outcome of an investigation. VRLC's mission to deter and prevent sexual violence and assist survivors of sexual violence with school proceedings is frustrated because fewer student survivors will come forward (therefore, fewer incidents will be investigated) if their schools are no longer allowed to protect them from certain types of retaliation by their harasser, other classmates or school staff. For example, many schools will likely believe they can no longer discipline respondents, other students, or staff who embark on retaliatory intimidation campaigns by publicly disclosing private or humiliating evidence about a complainant that was obtained in an investigation. This is because the Final Rule prohibits schools from restricting students from discussing *allegations*, only clarifying through language buried in 554 pages of preamble that schools *may*, however, choose to restrict discussion of *evidence*. The VRLC will also be forced to represent fewer survivors as many students will no longer come forward if they know they could be disciplined for making a "false" accusation, including when schools determine an allegation is "false" by relying on rape myths or stereotypes that label women and girls of color, pregnant and parenting students, LGBTQ and students with disabilities as being promiscuous, more aggressive, less credible and less deserving of protection. Further, VRLC's mission to help students enforce their Title IX

rights is frustrated because we are no longer able to file administrative complaints with the Department of Education on behalf of survivors whose schools did not protect them from retaliation or whose schools wrongly disciplined them for making a "false" accusation.

28. As a result of sections 106.71(b)(1)-(2) and 106.45(b)(5)(iii), VRLC's resources will be diverted as staff attorneys spend more time and resources identifying alternative state or local laws that prohibit all forms of retaliation and that prohibit schools from unfairly disciplining survivors for "false" accusations, thereby taking resources from other mission-critical work and forcing VRLC to take fewer clients.

29. Section 106.6(h) of the Final Rule frustrates VRLC's mission to obtain fair and accurate outcomes for survivors and to deter and prevent sexual violence by preempting any state or local law that provides stronger protections for students against sexual harassment to the extent that those protections directly conflict with Final Rule. One example of conflict in Massachusetts is the likely difficulty schools will have complying with both civil protection orders (CPO) held by complainants against respondents under MGL §209A and §258E and with the Final Rule provision requiring the parties to appear together at a live hearing. While the state CPO law provides an exception for criminal trials, it does not provide an exception for school misconduct proceedings to allow the parties to appear together in person or virtually. Given that respondents then will likely require a modification of the civil protection order before appearing for the live hearing, many complainants will be reluctant to seek relief under MGL §209A and §258E for fear that it will delay, or even halt, the investigation process.

30. Section 106.6(h) forces VRLC to divert resources from other critical work representing sexual assault survivors in employment, immigration, housing, and privacy-related

17

matters, as well as training legal aid lawyers assisting survivors nationwide in order to spend more time assisting state and local policymakers to rewrite existing laws to not conflict with the Final Rule.

31. As a whole, I am very concerned with the negative impact of the Title IX Rule. By chilling reporting, reducing the number of investigations that schools will conduct, allowing schools to respond unreasonably to sexual harassment, and mandating inequitable grievance procedures that are skewed in favor of respondents, there will be less justice for victims and less deterrence of sexual harassment. Also, the legal advocacy that VRLC provides will drastically rise in demand for services and will stretch its legal services for victims beyond current funding parameters. VRLC has 16 years of experience in providing services to survivors of sexual assault and harassment, including in Title IX proceedings. These are the most voluminous, drastic, and harmful changes to Title IX that VRLC has seen in our organization's existence. These drastic changes to Title IX will harm victims of sexual violence across the country.

32. I declare under penalty of perjury that the foregoing is true and correct.

Executed on October 1, 2020.

_____
Stacy Malone, Esq.