# EXHIBIT G

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| **VICTIM RIGHTS LAW CENTER**<br>115 Broad Street, 3rd Floor<br>Boston, MA 02110, | |
| **EQUAL RIGHTS ADVOCATES**<br>1170 Market Street, Suite 700<br>San Francisco, CA 94102, | Case Number: 1:20-cv-11104 |
| **LEGAL VOICE**<br>907 Pine Street, Suite 500<br>Seattle, WA 98101 | Amended Declaration of Lisa M. Stone |
| **CHICAGO ALLIANCE AGAINST SEXUAL EXPLOITATION**<br>307 N. Michigan Ave., Suite 1818<br>Chicago, IL 60601 | |
| **JANE DOE**, an individual by and through her mother and next friend, **MELISSA WHITE** | |
| **NANCY DOE,** an individual | |
| **MARY DOE,** an individual | |
| Plaintiffs,<br>v. | |
| **ELISABETH D. DEVOS**, in her official capacity as Secretary of Education,<br>400 Maryland Avenue SW<br>Washington, DC 20202, | |
| **KIMBERLY RICHEY**, in her official capacity as Acting Assistant Secretary for Civil Rights,<br>400 Maryland Avenue SW<br>Washington, DC 20202, | |
| **U.S. DEPARTMENT OF EDUCATION**,<br>400 Maryland Avenue SW<br>Washington, DC 20202, | |
| Defendants. | |

## AMENDED DECLARATION OF LISA M. STONE (LEGAL VOICE)

I, Lisa M. Stone, declare as follows:

1. I submit this amended declaration in support of the proposed second amended complaint filed by Equal Rights Advocates ("ERA"), Victim Rights Law Center ("VRLC"), Legal Voice, Chicago Alliance Against Sexual Exploitation ("CAASE"), Jane Doe, Nancy Doe, and Mary Doe, plaintiffs in the above-captioned case, which challenges as unlawful the recently issued Rule entitled *Nondiscrimination on the Basis of Sex in Education Programs or Activities Receiving Federal Funding Assistance*. 85 Fed. Reg. 30,026 (May 19, 2020) (the "Title IX Rule" or "Final Rule").

2. I have personal knowledge of the statements below and have familiarized myself with the Final Rule in order to understand its impact on Legal Voice. If I am called as a witness in these proceedings, I could and would testify competently to these facts.

3. I have served as Legal Voice's Executive Director for twenty-five years and volunteered for the organization for the preceding seven years. In my leadership role, I oversee all of the organization's operations and have intimate knowledge of our litigation, legislative advocacy, and public education work. In addition, I have personally litigated cases related to sexual harassment and assault of students. These included one case in which our client was gang raped by fellow students and referred to by students—and at least one teacher – as "B.J.," an expression of a sexual activity in which she was forced to participate. Her family discovered that the school had not identified a Title IX coordinator, in violation of state and federal law. Legal Voice also sued a Jesuit university for its completely inadequate response to a sexual assault survivor, including forcing her to be in the same room as the perpetrator, which further traumatized her. On the legislative front, Legal

Voice, under my close direction, took the lead in the Washington Legislature, on a bill to remove a judicially imposed requirement that petitioners seeking a Sexual Assault Protection Order had to prove not only that the assault occurred, but also that they had a reasonable fear of future dangerous acts by the perpetrator. Similarly, under my supervision Legal Voice drafted and advocated for a bill to amend the state statute on Rape 3, to make clear that the victim need not prove "by clear words or acts" that she did not consent. This change removed the emphasis on the victim's behavior. I have presented training sessions, to both attorneys and lay people, about sex discrimination, sexual harassment, and sexual assault. I also directly oversee Legal Voice's direct services component, Sexual Violence Law, which provides holistic representation, brief services, and legal consultation to sexual assault survivors, especially those most marginalized and least served by the legal system.

4. Legal Voice is a Seattle-based non-profit public interest organization dedicated to protecting the rights of women, girls, and LGBTQ people. Legal Voice's work includes decades of advocacy to enact and enforce antidiscrimination laws and to eradicate sex-based discrimination in every area where it is present.

5. Legal Voice furthers its mission by participating in pro bono litigation services, legislative advocacy, and the provision of legal information and education. Legal Voice focuses on impact litigation and in particular works to support the communities most impacted by sex-based discrimination: women of color, LGBTQ and gender-nonconforming individuals, and immigrants. Legal Voice has served nearly 300 clients since 1978 through both direct representation and amicus support.

6. Legal Voice has provided pro bono representation in eight cases specifically related to Title IX in preK-12 schools and higher education. Two of those cases involved direct representation of sexual assault survivors.

7. As legislative advocates, Legal Voice has worked with Washington state legislators to codify additional protections for student survivors of sexual assault. For example, in the 2019 legislative session, Legal Voice successfully lobbied to ease the requirements to obtain a sexual assault protection order. In addition, Legal Voice crafted a bill that would have created a joint legislative task force on sexual violence in higher education, including Title IX protections and compliance. In the 2020 legislative session, Legal Voice successfully led efforts on a bill that imposes additional requirements on postsecondary educational institutions in their investigations of sexual misconduct. For each of these initiatives, Legal Voice provided testimony, drafted legislative language, and organized stakeholders.

8. Legal Voice has been irreparably harmed by the Title IX Rule.

9. The Final Rule frustrates Legal Voice's mission by limiting the efficacy of available avenues of redress to Legal Voice's clients and others it serves; increasing the costs Legal Voice bears in its work on behalf of student victims of sex-based harassment; and otherwise directly conflicting with, impairing, and frustrating Legal Voice's organizational mission and programmatic priorities.

10. Legal Voice has experience representing clients who have been sexually harassed or assaulted. We know that the Final Rule—as a whole and particularly because of the mandatory dismissals and new live hearing requirements creating unfairly burdensome and hostile procedures—will make survivors more reluctant to come forward or raise

allegations of assault or harassment. Survivors fear hostile live cross-examination and being forced to answer prejudicial and misleading questions, which the Rule requires. The Final Rule frustrates Legal Voice's mission and work to obtain fair and accurate outcomes for survivors and to deter and prevent sexual harassment and retaliation against survivors. The Final Rule will chill survivors' reports of campus sexual assault, which frustrates the mission of Legal Voice of representing survivors of campus sexual assault. With fewer reports, our mission to eradicate campus sexual assault is also frustrated.

11. As legislative advocates, Legal Voice will now have to spend more time and resources assisting state and local policymakers rewrite existing policies that provide stronger protections for survivors, in a way that the policies do not conflict with the Final Rule, and then advocate to have those policies passed and signed into law. This additional work of combating the harmful effects of the Final Rule's lack of protections for survivors diverts our resources from other mission-critical work.

12. Moreover, Legal Voice will be frustrated in its mission of deterring sexual abuse and harassment because survivors are now more likely to face retaliation from other students and staff, and perpetrators are now less likely to be held accountable. We know that women, girls, and LGBTQ+ persons, people of color, and students with disabilities are more likely to be disbelieved and blamed due to rape myths, stereotypes, and racism. These people—for whom we advocate—will be impacted most harshly by the Final Rule.

13. In addition, the Final Rule has diverted Legal Voice's time and resources from fighting for survivors to reviewing and understanding the massive, and often incoherent, Final Rule to inform our planned efforts to update our Know Your Rights materials for Washington, Idaho and Alaska. As a result of the confusion and uncertainty within the

Final Rule, Legal Voice can provide less legal advice, technical assistance, and representation to girls, women and LGBTQ+ people, including student victims of sex-based harassment.  This time would have otherwise been spent working on existing advocacy and legal matters including protections for low-wage women workers, health care for transgender individuals, improving the prison conditions of female inmates, mandating critical race theory be included in the health care professionals' curriculum and ongoing litigation including health care access for women in five states, transgender inclusion in high school and collegiate athletics, and ensuring unemployed workers are able to timely receive state benefits.

14. Legal Voice also expects to divert resources to provide increased technical assistance and education to students and educational institutions regarding the applicability of the Final Rule to pending and future Title IX cases, given the uncertainty in this area.  Legal Voice does this work in order to combat the harmful effects of the Final Rule and ensure students and educational institutions understand how to protect survivors under Title IX.  Legal Voice has already seen its resources diverted in this way, having provided technical assistance to a university Title IX Coordinator as well as on a Title IX workgroup for a local public school.  Legal Voice also expects to divert additional resources to legislative advocacy in 2021 geared toward codifying Title IX protections at the state level, because in the previous year, changes were contemplated, but stakeholders decided to wait until the Final Rule was issued.  As a result, Legal Voice will have fewer resources to devote to litigation that is central to its mission because of its staffing capacity.

15. Legal Voice is fielding technical assistance questions from the community, reviewing the rules and working to amend our public education efforts and prioritize outreach over other

programmatic work. For instance, our Know Your Rights resource guides and websites, which were developed in partnership with and written by community members and volunteers over the past year, will need to be updated with the new guidance. With a small staff and limited capacity and time to recruit volunteers, and because of the significant changes in the Final Rule, we have not been able to make any changes to our Know Your Rights resources and other educational materials. Legal Voice is also researching potential legislative proposals that would provide protections for survivors, particularly in the absence of certain protections under the Final Rule; however, Legal Voice cannot strategize with community groups and/or develop recommendations for state or local legislators quickly enough to prevent the harm the Rule is already causing.

16. Legal Voice is working with community and student groups to understand their needs and develop an outreach plan. As it has for schools trying to implement the Rule, COVID-19 has forced many community members, students, local partners, and our staff to work remotely, making it difficult to coordinate schedules and find time to collaborate—an impediment that was exacerbated by the August effective date.  Likewise, the uncertainty surrounding whether and when preK-12 and colleges and universities will be able to fully open because of the global pandemic creates additional challenges as universities, student associations, and public schools are overwhelmingly focused on trying to create educational environments that comply with best practices for reducing transmission of COVID-19.  Legal Voice is collaborating with many of these leaders to provide assistance and support around the new Title IX rule, given their limited capacity and resources.

17. Students who experience sexual harassment, including sexual assault, suffer not only physically and emotionally, but also in their ability to participate in and benefit from

educational opportunities, on the basis of sex. The Title IX Rule will worsen the devastating effects of sexual harassment in schools, and will further prevent and discourage victims from reporting sexual harassment because, among other things, it narrows the definition of sexual harassment to which schools may respond; constricts the universe of those school officials whose knowledge of harassment obligates the school to respond; and in numerous respects, unfairly tilts the grievance processes against students who report sex-based harassment ("complainants") and in favor of those who are reported harassers and assailants ("respondents"), which makes the process more intimidating and traumatizing for victims and puts in place new barriers to accurate fact-finding and adjudication of complaints.

18. Given these provisions, Legal Voice also anticipates diverting its resources to spend more time and resources representing clients in postsecondary institutions because live hearings with cross-examination will require significantly more time to prepare for and to complete.  This will involve helping our clients prepare for cross-examination, reaching out to other witnesses and persuading them to submit to cross-examination at the live hearing so that the school can consider their statements as evidence, and identifying additional evidence if a witness or the respondent refuses to submit to cross-examination and therefore their statements are excluded from the evidence.  As a result, Legal Voice anticipates it will spend approximately the same amount of time, if not more time, preparing a client for a Title IX proceeding as it would for a court hearing.

19. The Final Rule harms survivors and will create a chilling effect. Legal Voice has represented clients who transferred to other schools because of the sexual harassment and/or sexual assault they endured and their school administrations' failure to take timely

and proper steps to investigate and/or initiate disciplinary proceedings. In fact, one of those clients dropped out for a semester before subsequently transferring universities. Under the Final Rule, our client's claim would have been dismissed because that client would no longer have been participating in the university's program or activity. Moreover, the new regulations are neither trauma-informed nor recognize the equity issues involved. For students of color, low-income students, LGBTQ+ students and/or students with disabilities, the new requirements will likely result in a severe underreporting of sexual assault.

20. The Final Rule's cross-examination provision in particular will decrease the likelihood of students seeking to go through the Title IX process. By requiring all complainants and witnesses to engage in an adversarial process and submit to cross examination, the new regulations create an intimidating process in which most survivors and witnesses will not engage.

21. I am very concerned with the negative impact of the Title IX Rule. The pro bono legal advocacy that Legal Voice provides will drastically rise in demand for services and will stretch its free legal services for victims beyond current funding parameters. These drastic changes to Title IX will harm victims of sexual violence across the country, and Legal Voice will be less able to serve these survivors due to the Final Rule.

22. I declare under penalty of perjury that the foregoing is true and correct.

Executed on September 30, 2020.

*Lisa M. Stone*

Lisa M. Stone