1
2

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**VICTIM RIGHTS LAW CENTER**
115 Broad Street, 3rd Floor
Boston, MA 02110,

**EQUAL RIGHTS ADVOCATES**
1170 Market Street, Suite 700
San Francisco, CA 94102,

**LEGAL VOICE**
907 Pine Street, Suite 500
Seattle, WA 98101

**CHICAGO ALLIANCE AGAINST SEXUAL EXPLOITATION**
307 N. Michigan Ave., Suite 1818
Chicago, IL 60601

**JANE DOE**, an individual by and through her mother and next friend, **MELISSA WHITE**

**NANCY DOE,** an individual

**MARY DOE,** an individual

              Plaintiffs,

vs.

**ELISABETH DEVOS**, in her official capacity as Acting Secretary of Education, 400 Maryland Avenue SW Washington, DE 20202;

**KIMBERLY RICHEY**, in her official capacity as Acting Assistant Secretary for Civil Rights, 400 Maryland Avenue SW Washington, DC 20202,

**U.S. DEPARTMENT OF EDUCATION**, 400 Maryland Avenue SW Washington, DC 20202,

              Defendants.

Case No.: 1:20-cv-11104

**SUPPLEMENTAL DECLARATION OF MARY DOE**

1

I, MARY DOE, declare that I am over the age of 18 and competent to testify to the following facts:

1. As set forth in my declaration dated September 30, 2020, I was raped by another undergraduate student and acquaintance in my on-campus dorm room at a small four-year college in North Carolina ("the College") at or about 1:30am on August 28, 2020. I promptly reported my rape to my college's Title IX office where I was informed of how the investigation and hearing would proceed under the new Title IX rule, including my required attendance at a live hearing that included the respondent.

2. In addition to the challenges I outlined in my prior declaration, I wanted to inform the Court of new developments regarding my Title IX complaint and the further harms I have experienced because of the process imposed by the new Title IX rule.

**Updates Regarding My Title IX Investigation Since September 30, 2020**

3. The rape and subsequent Title IX investigation has continued to affect my mental health and access to education. In early October 2020, I quit my job because it became too stressful to juggle work, school, the investigation, and the mental and emotional effects of the sexual assault. It also became too difficult to live, study, and sleep in the room where I was raped, so I moved all of my belongings into a new dorm room.

4. Eventually, it became too difficult for me to continue living and going to school on campus and dealing with the Title IX investigation, and on November 6, 2020, I returned home to finish the fall 2020 semester online. I missed about 23 classes between the night of the rape and the night I left my College campus to return home. During that time, my grades dropped significantly – despite having been an A and B student, I had Cs in all of my classes. It was only after I left campus and finished my classes and final exams at home that my grades improved.

5. On November 7, 2020, the morning after I left my College campus, I learned that my College was issuing a written mutual No-Contact Order ("NCO") against my respondent and me, at the request of my respondent's attorney advisor. It is my understanding the College issued the NCO because the Final Rule prohibits supportive measures that could be considered

"punitive" or "unreasonably burdensome" against the respondent. Under the mutual NCO, I am now prohibited from contacting him and if I enter a campus hall, building, or other common space, and my respondent is already there, it will be my responsibility to leave that space. If I violate any of the many mutual NCO provisions, my College will subject me to a disciplinary investigation and sanctions. I feel this mutual NCO is punitive to me, because I was the one who was raped, and I am the one who needs protection from the respondent.

6. My College's academic program is primarily in-person this semester and on January 17, 2021, I returned to campus for the Spring semester. I remain worried that being back on campus near my respondent will cause my grades and attendance to suffer again, as it did in the Fall semester. I am also concerned because I am significantly restricted by the mutual NCO.

7. During this time, I have considered withdrawing my Title IX complaint because of all of the above challenges created by the Final Rule, but I do not want my respondent to hurt anyone else.

8. In November 2020, I was informed by a female classmate that on or around October 31, 2020, my respondent shoved her into his room while she was intoxicated and attempted to sexually assault her, but three of her male friends at the party noticed that she had disappeared and went to my respondent's room to help her escape. It is my understanding that afterwards, one of them remarked to the group that my respondent "does that when he gets drunk," in reference to the attempted sexual assault. It is therefore my understanding that my respondent has attempted to sexually assault others besides this female classmate and me.

9. This female classmate was interviewed during the course of my Title IX investigation and spoke about this incident. Her interview was transcribed and included in the final investigative report. According to the Final Rule and my College's policy, she will have to submit to cross-examination by my respondent's attorney, and answer every single question deemed relevant, in order for her transcribed interview statements to be considered as evidence in a determination of responsibility in my Title IX proceeding. If for any reason, she is not

able to submit to cross-examination at my hearing, my College will be unable to consider evidence that my respondent has sexually assaulted more than one person.

10. I continue to be deeply concerned that I will be at a disadvantage in the Title IX process because my College cannot compel anyone—including the police officer, hospital workers, friends who were with me the night of the rape and wrote messages to the respondent, or the female classmate who whose interview was transcribed for my case—to appear for live cross-examination, and as a result, important pieces of evidence in my case could be excluded.

11. I also continue to be terrified and anxious about being cross-examined myself. My College's sexual misconduct policy in the 2019-20 Student Handbook did not mention cross-examination, but the 2020-21 Handbook was revised to require cross-examination, after the Final Rule went into effect.

12. To date, my College has delayed my Title IX hearing several times.

13. First, in November 2020, my College informed me that my respondent did not submit the names of his witnesses until more than six weeks after I had done so. My College delayed the investigation in order interview his witnesses. At that point, my Title IX hearing was scheduled for late December or early January.

14. Second, my College did not issue its preliminary investigative report to the respondent and me until December 22, 2020. However, the report contained inaccessible hyperlinks that were not resolved until after the winter holidays. My College sent a corrected report on January 5, 2021 and asked us to submit responses by January 12, 2021. I submitted my responses before the January 12 deadline.

15. Third, on January 13, 2021, my College's Title IX coordinator informed me that my respondent had filed a formal complaint against me alleging that I had falsely accused him of sexual misconduct. On January 26, 2021, my College informed me that the Title IX investigation regarding my respondent's complaint against me would take an additional two to three weeks, and that the College would spend another one to two weeks modifying the investigative report regarding my complaint against my respondent. However, on February 3, 2021, my College informed me that the investigation regarding my respondent's complaint

against me would not begin until the week of February 8, 2021.  As a result, it is my understanding that my College could take until mid-March 2021 to send an updated investigative report for my respondent and me to review.

16. It is my understanding that these delays are allowed by the Final Rule, and that my College is allowed to delay my investigation further for other reasons.  My respondent is on track to graduate this Spring, and I worry that if my investigation is still pending when he graduates, my College could dismiss my complaint against my respondent pursuant to the Final Rule.  I have been informed by the Title IX Coordinator that after my respondent graduates, he intends to stay in this geographic location and therefore would have continued access to my College's campus like any other member of the community.  I am not scheduled to graduate until Spring 2022, and it is very concerning to me that my school could, in accordance with the Final Rule, dismiss my Title IX complaint after my respondent graduates even if my respondent continues to pose a danger to myself and other students.

17. To my knowledge, no hearing date has been scheduled.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on February 4, 2021 in North Carolina.

/s/ Mary Doe
Mary Doe