IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

VICTIM RIGHTS LAW CENTER, *et al.*,

    Plaintiffs,

v.

MIGUEL CARDONA, *et al.*,

    Defendants,

FAMILIES ADVOCATING FOR CAMPUS EQUALITY, JOHN DOE, STEVE DOE, and ZACHARY DOE,

    [Proposed] Intervenor-Defendants.

No. 1:20-cv-11104-WGY

**MEMORANDUM IN SUPPORT OF INDIVIDUAL MOVANTS' MOTION
TO INTERVENE AS DEFENDANTS FOR PURPOSES OF APPEAL**

John Doe, Steve Doe, and Zachary Doe (the "individual movants" or "movants") are students at post-secondary institutions who have been accused—falsely, they strongly maintain—of sexual misconduct. All three are currently subject to disciplinary proceedings governed by the regulations enacted last year by Defendant U.S. Department of Education (hereafter "the Education Department" or "the Department") that regulate post-secondary institutions' responses to claims of sexual misconduct ("the Final Rule"). In the wake of this Court's order vacating the part of that rule that bars reliance on statements not subject to cross-examination, *see* 34 C.F.R. § 106.45(b)(6)(i) (hereafter "the exclusionary rule"), their cases will likely—and in one case definitely—be adjudicated without the protection of that provision. That is because, following this Court's ruling, the Department has announced that "[p]ost-secondary

1

institutions are no longer subject to" the exclusionary rule[1] and has confirmed in writing to counsel for the movants that it will not appeal this Court's order vacating the rule. Schools across the country have now predictably begun to discard it, including Zachary Doe's own school. The individual movants are thus threatened with imminent injury, and intervening here is the only practical way they can remedy it. Moreover, if the Department decides not to oppose any appeal by Plaintiffs relating to the 12 other parts of the Final Rule that they challenge,[2] intervening as defendants in this matter will also be their only chance, as a practical matter, to ensure those other protections afforded them by the Final Rule are a part of their disciplinary proceedings. The individual movants therefore respectfully request an order allowing them to intervene in this matter for purposes of appeal.

## BACKGROUND

### I. The Final Rule

On November 29, 2018, the Education Department published a Proposed Rule outlining the obligations of post-secondary institutions in responding to claims of sexual harassment and sexual misconduct. *See* 83 Fed. Reg. 61462-01 (Nov. 29, 2018). It proposed, among other things, that decisionmakers be prohibited from relying on "*any* statement" of a party or witness who "does not submit to cross-examination" at a live hearing. 83 Fed. Reg. 61462, 61475 (emphasis added). A year and a half later, after an extensive period of notice and comment, the

---

[1] *See* https://www2.ed.gov/about/offices/list/ocr/docs/202108-titleix-VRLC.pdf?utm_content=&utm_medium=email&utm_name=&utm_source=govdelivery&utm_term= (last visited September 21, 2021).

[2] In response to counsel's inquiry whether the government intends to defend any appeal of the July 28 Order by the plaintiffs, the government responded that it was "not in a position to speculate about what arguments the government would advance in response to hypothetical briefs in an appeal that has not yet been taken." *See* Ex. 1.

Department then published the Preamble to its Final Rule. *See* 85 Fed. Reg. 30026-01 (May 19, 2020). The Preamble devoted 30 pages to the Final Rule's cross-examination provisions, *see id.* at 30311-15, 30331-56, including six directly focused on the exclusionary rule, *see id.* at 30344-30350. Further discussion of the exclusionary rule was scattered throughout the Preamble. *See, e.g.*, *id.* at 30215-16. The Preamble responded to several commenters' criticisms that the exclusionary rule was subject to abuse, including by respondents who might wrongfully procure the absence of witnesses and thereby suppress evidence. *See, e.g.*, *id.* at 30344 (noting criticism that respondent could "wrongfully procure[] the complainant's absence," thus "requir[ing] exclusion of a complainant's statements").

After considering all of those comments, the Department declined to create exceptions to the exclusionary rule, concluding that a "detailed set of evidentiary rules" was less likely to "result in fair, accurate and legitimate outcomes" than a bright-line rule. *Id.* at 30337. It instead responded to commenters' concerns about the exclusionary rule by, among other things, (1) "revis[ing] § 106.45(b)(6)(i) to grant a recipient discretion to hold the entire hearing virtually," and (2) expressly prohibiting retaliation designed to exclude anyone's participation in a grievance process. *Id.* at 30346.

**II.   The Response to This Court's July 28 Order**

On July 28, this Court upheld almost every part of the Final Rule challenged by the plaintiffs but vacated the exclusionary rule as arbitrary and capricious. ECF No. 183 at 49-50. It reasoned that if a respondent "elect[ed] not to attend the hearing," succeeded in non-tortiously "persuad[ing] other witnesses not to attend the hearing," had an advisor who succeeded in "discrediting" the complainant on cross-examination, did so in a way that left the complainant "without hope of evidentiary rehabilitation," and did *all of that* at a school that applied a "clear

and convincing evidence" standard of proof (which almost no school does), the hearing would be hollow, and therefore that the Department had failed to consider the effects of the exclusionary provision in conjunction with the rest of the Final Rule. *Id.* at 46-48.

In response to that order, the Department issued both a bulletin[3] and a letter[4] on August 24 stating that "[p]ost-secondary institutions are no longer subject to this portion of the provision" and that decision-makers "may now consider statements made by parties or witnesses that are otherwise permitted under the regulations, even if those parties or witnesses do not participate in cross-examination at the live hearing[.]"[5]  Predictably, many schools have responded by announcing they will no longer enforce the exclusionary rule.  Ohio University stopped enforcing it on August 27, just three days after the Department issued its guidance, and cited both that guidance and this Court's July 28 Order in explaining why.[6]  Penn State stopped enforcing it on August 30, citing both the guidance and this Court's order in explaining its decision.[7]  Dartmouth College has similarly announced that it "has revised the [Sexual Misconduct Policy] and related procedures consistent with July 28 and August 10, 2021 orders of" this Court "and August 24, 2021 guidance from the Department of Education" by striking the

---

[3] *See* https://content.govdelivery.com/accounts/USED/bulletins/2ee0a5d (last visited September 21, 2021).

[4] *See supra* n.1.

[5] *Id.* at 1.

[6] *See* Ex. 2 (Letter of Kerri Griffin, Aug. 27, 2021).

[7] *See* https://www.collegian.psu.edu/news/campus/penn-state-enacts-2-changes-to-title-ix-sexual-harassment-policy/article_4f53c3e6-17fd-11ec-aca0-abef77caefe0.html (reporting that Penn State ceased enforcing exclusionary provision on August 30) (last visited Sept. 24, 2021); *see also* https://policy.psu.edu/policies/ad85#FORMAL%20HEARING%20PROCESS (Penn State's current Title IX procedures, containing no exclusionary provision) (last visited Sept. 24, 2021).

exclusionary rule.[8]  And in the first week of September, Zachary Doe's college announced that, in response to the Department's guidance, it, too was getting rid of the exclusionary rule, effective immediately.  *See* Ex. 3 (Declaration of Zachary Doe) at ¶ 6.  Its announcement specifically noted that the college had only adopted live hearings with cross-examination in the first place because it had been required to by law.

### III.  The Individual Movants' Interests[9]

The individual movants are three students at post-secondary institutions subject to disciplinary proceedings governed by the Final Rule.

*John Doe* is a student at a college in Maryland.  Ex. 4 (Declaration of John Doe) at ¶ 1.  His school did not apply an exclusionary rule in the 2019-20 academic year, but consistent with the Final Rule it applied one at the time of this Court's July 28 Order.  *Id*. at ¶¶ 18-19.  Without the exclusionary rule, and the other parts of the Final Rule the plaintiffs challenge here, he will be subject to a disciplinary proceeding where the statements of several individuals can be used as evidence without being tested by cross-examination, including a witness friendly to his accuser who was present for part of the incident.  *Id*. at ¶ 22.  John Doe is also a member of Families Advocating for Campus Equality ("FACE"), an organization dedicated to providing support and resources to people accused of sexual assault and their families.  *Id.* at ¶ 25.

*Steve Doe* was a student at a college in North Carolina and remains subject to a disciplinary proceeding there despite have transferred to a different college.  Ex. 5 (Declaration of Steve Doe) at ¶¶ 1, 14.  Consistent with the Final Rule, his North Carolina school's policy

---

[8] *See* https://sexual-respect.dartmouth.edu/compliance/dartmouth-sexual-and-gender-based-misconduct-policy-and-procedures (last visited Sept. 21, 2021).

[9] In addition to the interests described here and in their declarations, the individual movants adopt the Answer to the Second Amended Complaint filed by the State of Texas (ECF No. 190).

5

applies the exclusionary rule. *See id.* at ¶ 15. At least as of November 1, 2018, his school's Policy contained no exclusionary rule. *Id.* Without the exclusionary rule, and the other parts of the Final Rule the plaintiffs challenge here, he will be subject to a disciplinary proceeding where the statements of several individuals can be used as evidence without being tested by cross-examination, including witnesses friendly to his accuser who spoke with her about the incident that night and one of whom claims to have seen now-unavailable electronic evidence. *Id.* at ¶ 18.

*Zachary Doe* was a student at a college in Ohio and remains subject to a disciplinary proceeding there despite having withdrawn from the college. Ex. 3 at ¶ 1. Consistent with the Final Rule, his Ohio college initially adopted the exclusionary rule. *Id.* at ¶ 5. As noted above, it announced in early September that it has now discarded the rule in response to the Department's August 24 guidance. Its current policy now states that as to any person who does not submit to cross-examination, the decisionmaker will weigh any relevant statements of theirs appropriately. Without the exclusionary rule, and the other parts of the Final Rule the plaintiffs challenge here, he will be subject to a disciplinary proceeding where the statements of several people can be used as evidence without being tested by cross-examination, including witnesses friendly to his accuser who interacted with her immediately before and after the incident. *Id*. at ¶ 8.

## ARGUMENT

The individual movants have interests at stake that warrant intervention, and the government does not intend to defend them. When a movant seeks to intervene for purposes of appeal to seek relief that a party does not, the movant may do so upon satisfying the criteria for both constitutional standing and Rule 24. *Diamond v. Charles*, 476 U.S. 54, 68 (1986). The individual movants readily do so.

I. **THE INDIVIDUAL MOVANTS HAVE STANDING.**

Constitutional standing has three parts: (1) an "actual or imminent" injury that is (2) "fairly traceable" to the conduct complained of, and which (3) is "likely" to be redressed by a favorable decision. *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 561 (1992) (brackets and quotation marks omitted). When a party moves to intervene for purposes of appeal, the question is whether "the proceeding below" is likely to result in that kind of injury to it. *Sea Shore Corp. v. Sullivan*, 158 F.3d 51, 55 (1st Cir. 1998). Movants satisfy all three criteria.

A. **Movants Face Imminent Injury.**

First, movants face the threat of imminent injury. That fact is beyond dispute for Zachary Doe, whose school has *already* discarded the exclusionary rule. *See* Ex. 3 at ¶ 6. Not only will the Court's July 28 Order subject him to a hearing without that protection, but it will also force him in the meantime to operate in the shadow of the exclusionary rule's unavailability. Every strategic decision he must make—from whether to pursue informal resolution with his accuser to what kinds of evidence to prepare to respond to—is affected by the level of procedural protection he (and his accuser) know he will be afforded at a hearing. *See id.* at ¶ 7. His injury, therefore, is not just the imminent threat of a hearing that lacks that protection; like Mary Doe's, it also is "h[is] treatment thus far under the [July 28 Order's] regime." ECF No. 183 at 24.

John Doe and Steve Doe also face the threat of imminent injury. Injury need not be certain to qualify as imminent; there need only be "a sufficient threat of it occurring." *Dantzler, Inc. v. Empresas Berrios Inventory & Operations, Inc.*, 958 F.3d 38, 47 (1st Cir. 2020), *cert. denied sub nom. Dantzler, Inc. v. S2 Servs. Puerto Rico, LLC*, 2021 WL 1951807, 209 L. Ed. 2d 751 (May 17, 2021); *see also Hummel v. St. Joseph Cty. Bd. of Comm'rs*, 817 F.3d 1010, 1019 (7th Cir. 2016) (possibility of injury need not "be certain"; rather, "there must be at least a

substantial risk that such harm will occur"). Even injury that is not likely to occur in the near term, but becomes likely only over the span of "months and years," can qualify as imminent. *See, e.g.*, *Berner v. Delahanty*, 129 F.3d 20, 24 (1st Cir. 1997) (plaintiff-lawyer had sufficiently imminent injury to challenge defendant-judge's ban on political pins in courtroom because plaintiff was likely to appear before him at some point "in the months and years to come").

As explained above, John's and Steve's schools adopted the exclusionary rule because the government made them; both schools resolved sexual misconduct matters without such an exclusionary rule before the Final Rule was enacted. Courts routinely hold that when government pressure or coercion forces a third party to change its behavior, removing the pressure or coercion makes it likely the third party will revert to its *status quo ante*. *See, e.g.*, *Nat'l Wrestling Coaches Ass'n v. Dep't of Educ.*, 366 F.3d 930, 942 (D.C. Cir. 2004) ("where there is "formidable evidence of causation" between government action and third party's changed behavior, "[a] court is easily able to discern" that invalidating the action will likely change third party's behavior).

Thus, in *Houlton Citizens' Coalition v. Town of Houlton*, 175 F.3d 178 (1st Cir. 1999), the First Circuit held that a trash collector, the sublimely named William Faulkner, had standing to sue to invalidate a town ordinance requiring all residents to contract for garbage removal with one of his competitors, thereby denying him business in the town. *Id.* at 182. He did not sue any of the town's residents, so no court order could *guarantee* that any of them would resume contracting with him if the court struck down the ordinance. The court nevertheless found a sufficient likelihood that residents *would* re-contract with him because his lost business "c[ould] be traced directly to the Town's neoteric waste management scheme," *i.e.*, the mandate that had forced his customers to leave him. *Id.* at 183. No part of the court's analysis turned on whether

8

there was affirmative evidence that residents would actually re-contract with Mr. Faulkner; it was enough that the mandate had caused them to leave and is what he was seeking to invalidate.

Similarly, in *The Pitt News v. Fisher*, 215 F.3d 354 (3d Cir. 2000), the Third Circuit concluded that the University of Pittsburgh's student newspaper had standing to challenge a 1996 law that barred liquor sellers from advertising in college publications. *Id.* at 361. It was "not merely speculative" that invalidating the law would cause liquor sellers to again advertise in the paper, because the law was what "clearly led *The Pitt News*' advertisers to cancel their contracts with the student newspaper." *Id.*[10] In both cases, government mandates forced third parties to modify their behavior, and in both cases the court held that removing the mandate would likely restore the *status quo ante*.[11]

So too here—John's and Steve's schools adopted the exclusionary rule under government compulsion, and therefore are likely to discard it now that the mandate is vacated. In fact, the evidence is even stronger than that. Not only has the mandate been invalidated, but there have also been affirmative statements from the Education Department (remarkably, before its appeal

---

[10] As those cases indicate, the analysis is more often done under the prong of redressability, because in the usual case a party is seeking to invalidate a mandate and must show whether its removal will remedy its injuries. But the logical question—whether invalidating a government mandate makes it likely the regulated party will revert to its *status quo ante*—is the same.

[11] Even where government *pressure* (as opposed to government *mandate*) is responsible for the changed behavior—and therefore where the "evidence of causation" is less "formidable" than here, *Nat'l Wrestling Coaches Ass'n,* 366 F.3d at 942—removal of that pressure can make it sufficiently likely that the third party's behavior will change for standing purposes. *See, e.g.*, *Federal Election Comm'n v. Akins,* 524 U.S. 11, 25 (1998) (finding plaintiff had standing to obtain court determination that the organization was a "political committee" where that determination would make agency more likely to require reporting, despite agency's power not to order reporting regardless); *Bennett v. Spear*, 520 U.S. 154, 170 (1997) (holding that the plaintiff's claims were redressable where the government had pressured a third party to act and the *status quo ante* had been unchanged for a long time).

window even closed) telling schools they *can* comfortably discard it.[12] And as noted above, multiple schools have *already* discarded it, expressly noting this Court's holding in doing so, as if to confirm the logic of the cases discussed above. The mandate, too, existed for only a year; there is a little reason to think that any school that employed it for just a year, under government compulsion, will retain it. There is more than a "sufficient threat," *Dantzler, Inc.*, 958 F.3d at 47, that John's and Steve's schools will do what others are already doing and discard it.

John and Steve, like Zachary, are also both harmed by having to operate in the shadow of the exclusionary rule's unavailability. Every strategic decision they make will be affected by the level of procedural protection they (and their accusers) know will be afforded at a hearing. *See* Ex. 4 (Declaration of John Doe) at ¶ 23; Ex. 5 (Declaration of Steve Doe) at ¶ 16; *cf.* ECF No. 183 at 24. Any lingering uncertainty they have about whether their schools will presently discard the rule impairs their decision-making as well.

For all of these reasons, the individual movants satisfy the first prong of the standing analysis.

      **B.**     **Movants' Injuries Are Traceable to the July 28 Order and Would Be Redressed By Its Reversal.**

The individual movants satisfy the second and third prongs as well. The July 28 Order invalidated the exclusionary rule and led the Department to issue its August 24 guidance, both of which schools have cited when deciding to discard the rule. Reversal of that order on appeal would reinstate the rule and redress the movants' injuries. *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 150 (2010) ("Because that injury is caused by the very remedial order that

---

[12] *See supra* n.1.

petitioners challenge on appeal, it would be redressed by a favorable ruling from this Court."). The individual movants thus have standing to intervene.

## II. MOVANTS SATISFY THE CRITERIA FOR INTERVENTION UNDER FEDERAL RULE OF CIVIL PROCEDURE 24.

### A. Movants Satisfy the Criteria for Intervention as of Right.

Rule 24(a)(2) states that a court, on "timely motion," "must permit anyone to intervene" who "claims an interest relating to the property or transaction that is the subject of the action" so long as "disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest" and existing parties do not "adequately represent that interest." Fed. R. Civ. P. 24(a)(2). Although each of those elements must be fulfilled, the "inherent imprecision of Rule 24(a)(2)'s individual elements dictates that they 'be read not discretely, but together,' and always in keeping with a commonsense view of the overall litigation." *Pub. Serv. Co. of N.H. v. Patch,* 136 F.3d 197, 204 (1st Cir. 1998) (citation omitted).

#### 1. The Motion Is Timely.

The timeliness of a motion to intervene "is to be determined from all the circumstances." *Nat'l Ass'n for Advancement of Colored People v. New York*, 413 U.S. 345, 366 (1973)). Courts in this circuit assess four factors in determining whether a motion to intervene is timely: (1) the length of time the movant knew of its interest before it petitioned to intervene; (2) any prejudice to the existing parties caused by the movant's delay; (3) the prejudice movant would suffer if it were not allowed to intervene; and (4) the existence of extraordinary circumstances militating for or against intervention. *Culbreath v. Dukakis*, 630 F.2d 15, 20–24 (1st Cir. 1980).

Movants' motion is timely under those criteria. They seek intervention fewer than two months after this Court issued its July 28 Order. *See Pub. Citizen v. Liggett Group, Inc.*, 858 F.2d 775, 785 (1st Cir. 1988) (motion to intervene was timely because it was filed "when the

intervenor became aware that its interest in the case would no longer be adequately protected by the parties"). The plaintiffs will suffer no prejudice from movants' failure to file even earlier, because the window for filing an appeal has yet to run; the only harm the plaintiffs stand to suffer at all is a slight delay in the briefing on any appeal they may file while this motion is resolved. Movants, by contrast, will suffer extraordinary prejudice if they cannot intervene because they have no other effective way to challenge the Court's decision, which not only struck down the provision in question but has led the Education Department to forgo any effort to defend that provision. Motions to intervene that are filed "within the time period in which the [original parties] could have taken an appeal" generally are "timely filed and should [be] granted," *see United Airlines, Inc. v. McDonald*, 432 U.S. 385, 395-96 & n.16 (1977), and no "extraordinary circumstances," *Culbreath*, 630 F.2d at 24, suggest otherwise here.

### 2. The Court's Decision Impairs Significant Protectable Interests of Movants.

Movants satisfy the second and third prongs for intervention as of right as well, for largely the same reasons that they have standing here. *See Daggett v. Comm'n on Governmental Ethics & Election Pracs.*, 172 F.3d 104, 110 (1st Cir. 1999) ("Although the two are not identical, the 'interest' required under Rule 24(a) has some connection to the interest that may give the party a sufficient stake in the outcome to support standing under Article III."). Though there "is no precise and authoritative definition of the interest required to sustain a right to intervene," *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 638 (1st Cir. 1989), it generally requires a "sufficiently close relationship" between the intervenor's claims and "the dispute between the original litigants," *Conservation Law Found. v. Mosbacher*, 966 F.2d 39, 42 (1st Cir. 1992). Movants' interests map perfectly onto "the dispute between the original litigants": They seek to argue that one of the provisions challenged by the plaintiffs was validly enacted under the

12

Administrative Procedure Act, just as the government argued in this Court. Their interest is the "mirror image" of the plaintiffs'—just as plaintiffs allege they are "being injured by the [Final Rule]," movants "w[ould] be injured by [the Final Rule's] invalidation." *Builders Ass'n of Greater Chi. v. City of Chicago*, 170 F.R.D. 435, 440 (N.D. Ill. 1996).

Movants' interests are impaired, "as a practical matter," by invalidation of the exclusionary provision. Fed. R. Civ. P. 24(a)(2). As explained above, the individual movants face the imminent threat of enduring disciplinary hearings where the decisionmakers in their cases will weigh statements untested by cross-examination. *See Citizens for Balanced Use v. Montana Wilderness Ass'n*, 647 F.3d 893, 898 (9th Cir. 2011) (intervenor-defendant's interests "may, as a practical matter, be impaired" if court invalidated government rule and thereby gave third parties discretion to commit the harms plaintiffs feared). And in the meantime, they are subjected to an uncertain disciplinary process whose contours are not yet determined (as to John and Steve) and in which their decisions must be made in the shadow of the lessened procedural protections the parties will enjoy at any hearing (as to all three). *Cf.* ECF No. 183 at 24 ("Mary's injury thus far is her treatment under the Final Rule's regime.").

### 3. The Government Will Not Adequately Represent Movants' Interests.

Movants also readily satisfy the final criterion for intervention. It is well established that "an applicant for intervention need only make a minimal showing that the representation afforded by existing parties likely will prove inadequate." *Pub. Serv. Co. of New Hampshire v. Patch*, 136 F.3d 197, 207 (1st Cir. 1998). Even if that burden is heightened when intervening on the side of the government, it is still overcome by "a strong affirmative showing that the agency (or its members) is not fairly representing the applicants' interests." *Victim Rts. L. Ctr. v. Rosenfelt*, 988 F.3d 556, 561 (1st Cir. 2021). Here it is not merely "likely" that the government's

representation will prove inadequate—it is *certain*, because the government has stated that it will not be appealing the Court's July 28 Order. *See id*. at 562 (noting that First Circuit has "held that a state agency's representation of movant fishing groups was inadequate when the agency raised no defense to the suit and agreed to a settlement" less favorable to movants than the *status quo ante*) (citing *Conservation L. Found. of New England, Inc.*, 966 F.2d at 44. Defendants could even decide not to defend the *rest* of the Final Rule in any appeal filed by the plaintiffs, or they could choose to defend it only against certain arguments but not others.[13] Given the politically charged nature of Title IX matters, such a change would not be surprising. The individual movants should thus be permitted to intervene not only to defend the exclusionary rule but also to ensure a full defense against any appeal by the plaintiffs. *Conservation L. Found. of New England, Inc.*, 966 F.2d at 44–45 ("An intervenor need only show that representation *may* be inadequate, not that it is inadequate.") (emphasis added, citing *Trbovich v. United Mine Workers,* 404 U.S. 528, 538 n.10 (1972)).

      **B.**      **Movants Satisfy the Criteria for Permissive Intervention As Well.**

Alternatively, the Court should use its "very broad discretion" to grant movants leave to intervene under Rule 24(b). *The Travelers Indem. Co. v. Bastianelli*, 250 F.R.D. 82, 85 (D. Mass. 2008). That rule states that a court, on "timely motion," "may permit anyone to intervene" who "has a claim or defense that shares with the main action a common question of law or fact," provided it would not "unduly delay or prejudice the adjudication of the original parties' rights." Fed. R. Civ. P. 24(b)(2)-(3).

As courts in this Circuit have recognized, permissive intervention is concerned with securing a "fair, efficient and expeditious resolution of the case." *Charlesgate Nursing Ctr. v.*

---

[13] *See supra* n.2.

14

*State of Rhode Island*, 723 F. Supp. 859, 862 (D.R.I. 1989). Courts may therefore look to additional factors when weighing permissive intervention, including whether the movant's interests are adequately represented by the parties. *Commonwealth v. United States Dep't of Health & Hum. Servs.,* 289 F. Supp. 3d 259, 265 (D. Mass. 2018). That is because the "'just and equitable resolution'" with which the rule is concerned is served by allowing "'the strongest possible arguments by counsel.'" *The Travelers Indem. Co.,* 250 F.R.D. at 86 (granting intervention and quoting *N.H. Ins. Co. v. Greaves*, 110 F.R.D. 549, 552 (D.R.I. 1986)).

For the reasons explained above, movants' motion is timely and would only minimally delay any appeal. *Cf. Steves & Sons, Inc. v. JELD-WEN, Inc.*, 323 F.R.D. 553, 561 (E.D. Va. 2018) ("Rule 24(b) mentions only undue delay; normal delay does not require denying intervention, because adding parties to a case almost always results in some delay."). Movants' position also shares "a common question of law or fact" with the position taken by Defendants in this Court, in that movants will similarly argue that the exclusionary provision is consistent with the Administrative Procedure Act. ECF No. 144 at 11-13 (government's pretrial brief); *see Mass. Food Ass'n v. Mass. Alcoholic Beverages Control Comm'n*, 197 F.3d 560, 568 (1st Cir. 1999) (defending the validity of a challenged statute meets "the low threshold set by Rule 24(b)").

Intervention should be granted to ensure that "'the strongest possible arguments'" are advanced before the exclusionary rule, or any other part of the Final Rule, is irreversibly invalidated. *The Travelers Indem. Co.*, 250 F.R.D. at 86 (quoting *N.H. Ins. Co.*, 110 F.R.D. at 552). As noted above, the Court invalidated the exclusionary rule on the basis that all of the following things could theoretically happen in a particular case:

- The respondent "elects not to attend the hearing";

15

- The respondent then tries—and succeeds—in "persuad[ing]" other witnesses not to attend the hearing";

- The respondent is able to do so only in ways that do not amount to retaliation or tortious conduct;

- The respondent's advisor then tries—and succeeds—in "discrediting" the complainant on cross-examination, so much so that the complainant is "without hope of evidentiary rehabilitation"; *and*

- All of that occurs at a school that applies a "clear and convincing evidence" standard of proof.

ECF No. 183 at 46-48.  The First Circuit may very well agree that this potential chain of events means the Department failed to adequately consider the effects of the exclusionary rule.  But there is ample basis to conclude that it may not.  The vast majority of schools, including those of all three individual movants, apply the preponderance of evidence standard, not a clear and convincing evidence standard.  And as their declarations show, the primary witnesses in Title IX proceedings, besides the parties, are typically friends of the complainant or medical and police professionals.  *See* Ex. 4 (Declaration of John Doe) at ¶ 22 (identifying witnesses he will likely need to cross-examine); Ex. 5 (Declaration of Steve Doe) at ¶ 18 (same); Ex. 3 (Declaration of Zachary Doe) at ¶ 8 (same).  Respondents hold little non-retaliatory sway over such witnesses.  Schools, furthermore, can and do readily schedule hearings without discussing witness availability with the parties, and the threat of a retaliation charge typically ensures that any ill-willed complainant or respondent will play it straight.  There is little reason to think that a determined respondent could secure witness non-availability across the board, let alone that it might be a frequent occurrence.

  Any rule, of course, is subject to abuse.  If agencies were required to address every conceivable way that a determined wrongdoer could, by some imagined chain of events (however unlikely), manage to abuse a rule, few rules would withstand scrutiny.  The law

sensibly does not hold administrative agencies to that standard. "[E]ven if the Department[] did not consider every conceivable alternative, such vigorous analysis is not required under the APA." *Massachusetts v. United States Dep't of Health & Hum. Servs.*, 513 F. Supp. 3d 215, 225-26 (D. Mass. 2021). Agencies, rather, "fulfill[] their obligation by properly considering a number of reasonable alternatives and offering an explanation for why they were rejected." *Id.* There is no evidence before the Court, and none that counsel for the individual movants is aware of, suggesting that the possible chain of events identified by this Court was raised in any of the more than 100,000 comments submitted to the Department. *See id.* at 225 ("the Commonwealth offers little evidence that [its] proposed alternatives were obvious or suggested by any commenter prior to the issuance of the rules"). That non-barking dog says quite a bit. But even if such a scenario *had* been raised, it is well-settled that an agency "need not consider every alternative proposed nor respond to every comment made. Rather, an agency must consider only significant and viable and obvious alternatives." *Nat'l Shooting Sports Found., Inc. v. Jones*, 716 F.3d 200, 215 (D.C. Cir. 2013) (internal quotations and citations omitted); *see also Stauffer v. Internal Revenue Serv.*, 285 F. Supp. 3d 474, 484 (D. Mass. 2017) (quoting *Nat'l Shooting Sports Found., Inc.*, 716 F.3d at 215). The Department was required only to "adequately explain [its] action" and "respond to 'relevant' and 'significant,'" and "neither requirement . . . is particularly demanding." *E. Alabama Med. Ctr. v. Shalala*, 925 F. Supp. 27, 36 (D.D.C. 1996) (quoting *Public Citizen, Inc. v. Federal Aviation Admin.,* 988 F.2d 186, 197 (D.C.Cir.1993)). An agency therefore "need not justify the rules it selects in every detail." *Shands Jacksonville Med. Ctr., Inc. v. Azar*, 366 F. Supp. 3d 32, 48 (D.D.C. 2018), *aff'd*, 959 F.3d 1113 (D.C. Cir. 2020). It need only "explain the general bases for the rules chosen." *Connecticut Light & Power Co. v. Nuclear Regul. Comm'n*, 673 F.2d 525, 528 (D.C. Cir. 1982).

Here, the Department *did* consider arguments that respondents may seek to abuse the exclusionary rule by trying to secure the non-appearance of the most important witness in any proceeding—the complainant—and identified what it believed were the most appropriate ways to address that possibility. *See, e.g.*, 85 Fed. Reg. at 30346. There is a substantial argument to be made that the Department complied with the APA; intervention should be granted so that "'the strongest possible arguments'" to that effect can be made. *The Travelers Indem. Co.*, 250 F.R.D. at 86 (quoting *N.H. Ins. Co.*, 110 F.R.D. at 552).

The First Circuit may also conclude that remanding the exclusionary rule for further consideration *without* vacating it is the more appropriate remedy. "An inadequately supported rule . . . need not necessarily be vacated." *Allied-Signal, Inc. v. U.S. Nuclear Regul. Comm'n*, 988 F.2d 146, 150 (D.C. Cir. 1993). Rather, "[t]he decision whether to vacate depends on 'the seriousness of the order's deficiencies (and thus the extent of doubt whether the agency chose correctly) and the disruptive consequences of an interim change that may itself be changed.'" *Id.* at 150-51 (quoting *Int'l Union, United Mine Workers of Am. v. Fed. Mine Safety & Health Admin*, 920 F.2d 960, 967 (D.C. Cir. 1990)). Particularly here, where the defect in the exclusionary rule identified by the Court depends on a chain of events with multiple, somewhat tenuous links, remand without invalidation might be deemed especially appropriate.

## CONCLUSION

For 18 months, the Education Department received comments on its proposed rule, weighed them, then carefully addressed them before enacting its Final Rule. The Final Rule gave students, like the individual movants, important protections in defending against the most serious kind of charge a college student can face. The government is refusing to defend the part of the Rule that this Court invalidated, and it may very well refuse to defend other parts of the

Rule on appeal as well.  Intervention in this case, at this time, is thus the only practical way for the individual movants to secure the Final Rule's protections for themselves.  For all of the reasons stated above, they respectfully request an order allowing them to do so.

Dated:   September 27, 2021    Respectfully submitted,

/s/ Justin Dillon
Justin Dillon (*pro hac vice* pending)
Christopher C. Muha (*pro hac vice* pending)
Sarah R. Fink (*pro hac vice* pending)
KAISERDILLON PLLC
1099 14th St. N.W.
8th Floor West
Washington, D.C. 20005
Phone:  (202) 640-2850
Fax:  (202) 280-1034
jdillon@kaiserdillon.com
cmuha@kaiserdillon.com
sfink@kaiserdillon.com

/s/ Douglas S. Brooks
Douglas S. Brooks
Massachusetts Bar No. 636697
Libbey Hoopes Brooks, P.C.
399 Boylston St.
Boston, MA 02116
Phone: (617) 338-9300
Fax: (617) 338-9911
dbrooks@lhblaw.com

*Counsel for the Individual Movants*

## **CERTIFICATE OF SERVICE**

  I hereby certify that on this 27th day of September, 2021, the foregoing Memorandum in Support of Individual Movants' Motion to Intervene as Defendants for Purposes of Appeal was served upon all parties of record by the Court's CM/ECF system.


           /s/ Douglas S. Brooks
           Douglas S. Brooks

           *Counsel for the Individual Movants*